ams

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

MICHELLE PRUITT, )
)
Plaintiff, )
)
vs. )
) Case No. 03-4230-JAR
STATE OF KANSAS, )
)
Defendant. )
)

**MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant State of Kansas (the State) moves for summary judgment (Doc. 25) in this case under Title VII of the civil Rights Act of 1964. Because the Court finds that plaintiff only submits a case of retaliation under Title VII, and because the Court finds that plaintiff had a reasonable good faith belief that she was complaining of actionable conduct under Title VII, the State's motion for summary judgment is partially denied. However, the Court grants partial summary judgment to the State on the sole issue of compensatory damages because compensatory damages are not recoverable by a Title VII plaintiff against a government under the plain language of 42 U.S.C. § 1981a.

**I. Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law."[1] A fact is only material under this standard if a dispute over it would affect the outcome of the suit.[2] An issue is only genuine if it "is such that a reasonable jury could return a verdict for the nonmoving party."[3] The inquiry essentially determines if there is a need for trial, or whether the evidence "is so one-sided that one party must prevail as a matter of law."[4]

The moving party bears the initial burden of providing the court with the basis for the motion and identifying those portions of the record that show the absence of a genuine issue of material fact.[5] "A movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[6] The burden may be met by showing that there is no evidence to support the nonmoving party's case.[7] If this initial burden is met, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[8] When examining the underlying facts of the case, the Court is cognizant that all inferences must be viewed in the light most favorable to the nonmoving party and that it may not

---

[1] Fed. R. Civ. P. 56(c).

[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

[3] *Id.*

[4] *Id.* at 251-52, 106 S. Ct. at 2512.

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).

[6] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325, 106 S. Ct. at 2548)).

[7] *Id.*

[8] *Id.*

make credibility determinations or weigh the evidence.[9]

## II. Factual Background

The Court takes this opportunity to point to the various local rules and filing conventions that the parties failed to adhere to during the briefing of this motion, making an extrapolation of truly uncontroverted facts difficult. In addition to the admonitions set forth in both orders to show cause by this Court, the parties should take note of D. Kan. R. 5.4.5, which states: "Filing Users must submit in electronic form *all* documents referenced as exhibits or attachments."[10] Also, D. Kan. R. 7.6 requires "[a]ny exhibits attached to motion briefs or memoranda [to] be separately labeled, and an index of such exhibits shall be provided to the court."[11] Additionally, both the supporting and opposing briefs for summary judgment "shall refer with particularity to those portions of the record" upon which the parties rely.[12]

First, the Court notes that neither party successfully attached in the first instance the requisite attachments or exhibits to their briefs. Also, when Plaintiff responded to the second order to show cause with her attachments, she improperly filed each relevant page of the same exhibit as separate exhibits, further complicating the situation.[13] Had the documents attached to "Plaintiff's Exhibit Matrix"

---

[9] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

[10] D. Kan. 5.4.5 (emphasis added).

[11] *See also* D. Kan. R. 56.1(d) (explaining that all facts in the summary judgment briefs must be presented by any outside material that they rely upon).

[12] D. Kan. R. 56.1(a)-(b).

[13] Rather, each document (i.e. plaintiff's deposition testimony, plaintiff's letter of resignation) should have been filed as an exhibit. Each exhibit may be multiple pages in length.

been filed properly, no such matrix would have been necessary. The brief itself need only include citations to the proper page numbers of an exhibit in the record. Plaintiff's insinuation in her supplemental response to the order to show cause that she should not be required to comply with the local rules for portions of the record that are quoted verbatim is misplaced. Plaintiff could have made this task much easier on herself and the Court by simply contacting the clerk's office for proper filing instructions. In the future, the Court advises both parties to avail themselves of the local rules for this district. Despite the fact that a reply brief was not filed in this case, and the fact that the parties did not follow the local rules, the Court sets forth the following facts that are either uncontroverted, stipulated to, or viewed in the light most favorable to plaintiff.

The State operates the National Guard of Kansas Readiness Sustainment Maintenance Site (RSMS) in Fort Riley, Kansas. Plaintiff Michelle Pruitt was a female employee at the RSMS from February 19, 2001 to February 28, 2003. During that time period, plaintiff worked as a supply specialist. Her supervisor during the relevant time period was Roger Jimenez.

On February 4, 2002, plaintiff filed a complaint with RSMS, alleging Jared Allen, a co-worker, sexually harassed her on multiple occasions and created a hostile work environment. In the spring of 2001, he asked plaintiff if he "would have a chance" with her if she was not married. She responded "no," and he became upset. After that point, Allen repeatedly attempted to walk her to her car after work, complimented her on her appearance, looked at her breast at least once, asked other coworkers of her whereabouts if she was working in a different area, stared at her, and at one point, threatened to throw a cup of water on her. He also asked plaintiff to comment on his appearance, specifically whether she had noticed that he had been working out.

In June 2001, plaintiff, coworker Garry Reed, and Allen all attended a ten-week training course in Topeka, Kansas. The attendees of this training course stayed at a motel during the week and provided their own transportation between the motel and the training site. Plaintiff noticed that Allen began spending time outside of class and driving to and from class with another female classmate, Karen Stewart, who was in the National Guard. Allen threatened plaintiff by telling her that he would tell her husband that she allowed a number of men in her motel room after class if she told Reed that he was spending time with Stewart.

After returning to Fort Riley from the training program, plaintiff told Reed and another coworker about the threat Allen made. A coworker told plaintiff later that Allen had indeed told RSMS employees that plaintiff had allowed men in her motel room after the training classes in Topeka. Plaintiff's formal sexual harassment complaint asked management to move either her or Allen into a different work section. She would have preferred that Allen, rather than she, be moved. Instead, Jimenez moved plaintiff to a different work section. He also advised Allen to stay away from plaintiff. However, Jimenez began calling Allen into his office when he needed to speak with him, rather than using an intercom, as he had regularly done in the past. This required Allen to walk past plaintiff's desk on his way to see Jimenez. This occurred up to fifteen times per day. In addition, plaintiff's coworkers stopped talking whenever she approached and mocked her for filing her complaint.

Almost one year after plaintiff filed the complaint, she was reprimanded on three occasions. First, on February 11, 2003, she was reprimanded for supply shortages. On February 24, 2003, she was reprimanded for tutoring an unauthorized non-RSMS employee on RSMS premises. Finally, on February 27, 2003, she was reprimanded for discussing her sexual harassment case. She resigned on

February 28, 2003, citing the fact that she felt singled out due to her complaint and "for the sake of my mental and physical health."

**III. Discussion**

***A. Plaintiff's Claims***

The State moves for summary judgment on what it characterizes as two distinct claims by plaintiff under Title VII: retaliation and sexual harassment due to a hostile work environment. Initially, the Court will determine if the State correctly characterized plaintiff's claim(s). The pretrial order in this case summarizes plaintiff's theory of recovery as follows: "she was intentionally subjected to retaliation, discrimination, and a hostile work environment because she engaged in protected activity." In her memorandum in opposition, plaintiff emphasizes multiple times that she does not assert a claim of sexual harassment. For example, she argues that the State, "[b]y dwelling as it has . . . upon the sexual harassment leading up to the filing of the Complaint, . . . is attempting to reconstitute Plaintiff's Complaint." Additionally, she only discusses her burden to prove a prima facie case of retaliation under Title VII. Importantly, plaintiff concludes her brief by stating: "Plaintiff therefore did not bring a sexual harassment or gender discrimination claim. Defendant argues, or perhaps wishes that she had done so, as many of its factual assertions would be material to such a claim, but they are immaterial to a retaliation claim." Accordingly, the Court finds that plaintiff only asserts a claim of retaliation for filing a sexual harassment complaint and does not assert a separate and distinct claim for sexual harassment due to a hostile work environment. The language in the pretrial order only asserts one itemized theory

of recovery[14]–that plaintiff was intentionally subjected to retaliation, discrimination, and a hostile work environment. Based on the contentions in the pretrial order and plaintiff's version of the facts in its summary judgment brief, the Court interprets this to mean that part of the claimed retaliation for filing her sexual harassment complaint entailed sexual harassment due to a hostile work environment. Therefore, the Court construes plaintiff's claim as one for retaliation only.

### *B. Retaliation*

Title VII prohibits employers from retaliating against employees for opposing discrimination.[15] Absent any direct evidence of retaliation, the Court will employ the burden-shifting framework set out by the Supreme Court in *McDonnell Douglas Corp. v. Green*[16] and *Texas Department of Community Affairs v. Burdine.*[17] Under this framework, plaintiff must first prove a prima facie case of retaliation.[18] If plaintiff is able to sustain this burden, the burden of production shifts to the State to "articulate a legitimate, nondiscriminatory reason for rejection."[19] If the State sustains this burden, the burden of production shifts back to plaintiff to show that the State's proffered reason for rejection is false, or merely a pretext, and the presumption of discrimination created by establishing a prima facie

---

[14] The pretrial order supersedes any contrary representations made in the pleadings. (Doc. 29, at 1.) "A pretrial order . . . is the result of a process in which counsel define the issues of fact and law to be decided at trial, and it binds counsel to that definition." *Madrigal v. IBP, Inc.*, 21 F.3d 1121, 1121 (10th Cir. 1994) (quoting *R.L. Clark Drilling Contractors v. Schramm*, 835 F.2d 1306, 1308 (10th Cir. 1987)).

[15] 42 U.S.C. § 2000e-3(a).

[16] 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

[17] 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981); *see McGarry v. Bd. of County Comm'rs*, 175 F.3d 1193, 1201 (10th Cir. 1999).

[18] *Burdine*, 450 U.S. at 252-53, 101 S. Ct. at 1093; *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S. Ct. at 1824.

[19] *See McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S. Ct. at 1824.

case "drops out of the picture."[20] Although the burden of production shifts back and forth between the parties, the ultimate burden of persuasion remains at all times with the plaintiff.[21]

To establish a prima facie case of retaliation under the statute, plaintiff must prove: (1) that she engaged in protected opposition to discrimination, (2) that she was subjected to adverse employment action after the protected activity, and (3) there is a causal connection between the protected activity and the adverse employment action.[22] Establishing a prima facie case is "not an onerous burden," and gives rise to an inference of discrimination by eliminating the most common nondiscriminatory reasons for plaintiff's treatment.[23]

Plaintiff maintains that she was retaliated against because she filed a sexual harassment complaint with RSMS concerning Allen. After filing the complaint, she claims that she was retaliated against by management and by her coworkers. She claims that the three written reprimands after filing the complaint were retaliatory and that her coworkers shunned and mocked her. She states that this environment lead to her constructive discharge. In response to plaintiff's claim of retaliation, the State argues only that plaintiff did not engage in protected opposition to discrimination. It also moves for partial summary judgment on any claim by the plaintiff for compensatory and/or punitive damages under 42 U.S.C. section 1981a.

---

[20] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143,120 S. Ct. 2097, 2106, 147 L. Ed. 2d 105 (2000) (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 50, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)).

[21] *Burdine*, 450 U.S. at 253, 101 S. Ct. at 1093.

[22] *Mattioda*, 323 F.3d 1288, 1293 (10th Cir. 2003); *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1205 (10th Cir. 2000); *Penry v. Fed. Home Loan Bank*, 155 F.3d 1257, 1263-63 (10th Cir. 1998), *cert. denied*, 526 U.S. 1039, 119 S. Ct. 1334, 143 L. Ed. 2d 498 (1999).

[23] *Burdine*, 450 U.S. at 254, 101 S. Ct. at 1094.

**1. Protected Opposition**

The State argues that plaintiff's act of filing a sexual harassment complaint is not sufficient to qualify as protected opposition to discrimination because plaintiff did not have a reasonable good faith belief that she was complaining about a violation of Title VII. Instead, the State maintains that plaintiff only complained about conduct that consisted of hearsay and gossip. The Court recognizes that plaintiff does not submit a sexual harassment claim; however, it is not necessary for plaintiff to succeed on or even assert that underlying claim in order to prove a case of retaliation if she had a reasonable, but mistaken good faith belief that Title VII had been violated.[24] Therefore, plaintiff engaged in protected opposition to discrimination if she had a reasonable belief that Title VII was violated.

The Supreme Court has ruled that, at a minimum, a person must reasonably believe that the incident(s) complained of violate Title VII.[25] To raise an actionable claim for sexual harassment under Title VII, the harassment must be "so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment."[26] To determine if an environment is sufficiently hostile under this standard, the Court should look at the totality of circumstances, paying special attention to the frequency of discriminatory conduct, severity of discriminatory conduct, whether the conduct is physically threatening or humiliating, or a "mere offensive utterance," and whether the

---

[24] *Crumpacker v. Kan. Dep't of Human Res*., 338 F.3d 1163, 1171 (10th Cir. 2003) (explaining that an actual violation of Title VII is not required to maintain a retaliation actions under the statute but clarifying that the plaintiff must have had a reasonable good faith belief that the underlying conduct was a violation of the statute), *cert. denied*, 540 U.S. 1180, 124 S. Ct. 1416, 158 L. Ed. 2d 82 (2004); *see Love v. RE/MAX of Am., Inc.*, 738 F.2d 383, 385 (10th Cir. 1984) (collecting cases).

[25] *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270, 121 S. Ct. 1508, 1509-10, 149 L. Ed. 2d 509 (2001) (per curiam).

[26] *Faragher v. City of Boca Raton*, 524 U.S. 775, 786, 118 S. Ct. 2275, 2283, 141 L. Ed. 2d 662 (1998) (internal quotations omitted); *see Breeden*, 532 U.S. at 270, 121 S. Ct. at 1509-10 (citations omitted).

conduct unreasonably interferes with the employee's work performance.[27] "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"[28]

The Court finds that plaintiff has produced sufficient evidence that would allow a reasonable jury to conclude that she had a reasonable, good faith belief that she had been subjected to sexual harassment due to a hostile work environment, as prohibited by Title VII. Although the incidents cited by plaintiff, taken in isolation, may not suffice; when taken in context, they could demonstrate a pattern of severe and pervasive behavior that created an abusive working environment. The State is unable to show that there is no genuine issue of material fact with regard to this element of the prima facie case. A jury could find that plaintiff had a reasonable, good faith belief that she was being subjected to actionable sexual harassment under Title VII when she filed her complaint. The State did not sustain its summary judgment burden of showing that there is no evidence to support plaintiff's claim of retaliation.[29]

**2. Damages**

The only other applicable argument advanced by the State is that it is entitled to partial

---

[27] *Breeden*, 532 U.S. at 270-71, 121 S. Ct. at 1510; *Faragher*, 524 U.S. at 787-88, 118 S. Ct. at 2283.

[28] *Breeden*, 532 U.S. at 270-71, 121 S. Ct. at 1510 (quoting *Faragher*, 524 U.S. at 788, 118 S. Ct. at 2283).

[29] The State only sets forth this sole argument on the issue of retaliation. Therefore, the Court will not evaluate the remaining elements of the prima facie case of retaliation, nor will it evaluate the remaining portions of the *McDonnell Douglas* framework. The Court is not required to construct arguments for a party and is "wary of becoming [an] advocate[] who comb[s] the record of previously available evidence and make[s] a party's case for it." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) (citations omitted). The State has not presented genuine issues of material fact with respect to whether plaintiff suffered adverse employment action, whether there is a causal relationship between the protected opposition and the adverse employment action, whether the State had a legitimate reason for its conduct, or whether the legitimate reason was a pretext for retaliation.

summary judgment because plaintiff may not recover compensatory or punitive damages under Title VII from a government. In the pretrial order, plaintiff claims $80,000 in compensatory damages.[30] Section 2000e-3 of Title VII , prohibiting retaliation, does not provide for either compensatory or punitive damages. However, the Civil Rights Act of 1991 provides for damages in retaliation cases "against a respondent (other than a government, government agency or political subdivision)."[31] Because the defendant is the State of Kansas–a government–there is no genuine issue of material fact that compensatory damages are unavailable to plaintiff in this case. Therefore, the Court grants the State summary judgment on any claim for recovery of compensatory damages.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 25) is **GRANTED** in part and **DENIED** in part. Defendant's Motion for Summary Judgment for all claims of compensatory damages is granted. Defendant's Motion for Summary Judgment on the remaining claims for relief is denied.

IT IS SO ORDERED.

Dated this 8th day of April 2005.

**S/ Julie A. Robinson**
**Julie A. Robinson**
**United States District Judge**

---

30 There is no claim in the pretrial order for punitive damages.

31 42 U.S.C. § 1981a(b).